# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| v. | NO. 19-108 |
| **SPENCER ROUNDS** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion to suppress evidence filed by defendant Spencer Rounds ("Rounds").[1] The government opposes the motion.[2] For the reasons that follow, the motion is **DENIED** in part and judgment is reserved in part, subject to an evidentiary hearing that will take place on May 31 at 2:00 P.M.

### I.  Background

In May of 2019, the Federal Drug Enforcement Administration ("DEA") was investigating several suspected methamphetamine dealers. Among them was Rounds, whose phone was wiretapped.[3] Based on his phone calls and other investigative work, the DEA believed that Rounds was in California with a co-conspirator and that they intended to ship contraband from California to Louisiana via UPS.[4] The DEA subsequently seized two packages and discovered "many kilograms of methamphetamine" therein.[5] The following day, law enforcement surveilled Rounds as he drove around "appear[ing] to be picking up drug proceeds"

---

[1] R. Doc. 190.
[2] R. Doc. 210.
[3] *Id.* at 2.
[4] *Id.*
[5] *Id.*

1

and eventually followed him to his residence.[6] After stopping Rounds' brother Jeremy as he exited the residence, the agents used the brother's key to enter the house and conducted a protective sweep.[7] The agents then secured a search warrant and searched the residence and Rounds' vehicle finding, among other things, some marijuana, UPS receipts, and a loaded firearm.[8]

In May of 2019, Rounds was indicted on charges of conspiracy to distribute and to possess with intent to distribute methamphetamine and being a felon in possession of a firearm.[9] In April of 2022, a superseding indictment was returned charging Rounds with additional charges of interstate travel or transportation in aid of racketeering, attempted possession with intent to distribute methamphetamine, use of a communication facility in facilitating the commission of a felony, and possession of a firearm in furtherance of a drug trafficking crime.[10] He now challenges three elements of the government's investigation, asserting that they violated his Fourth Amendment rights and that certain evidence should therefore be excluded.[11]

First, Rounds asserts that the government acted improperly in seizing one of the packages.[12] The package in question, which was addressed to "Jayson Smith,"

---

[6] *Id.* at 2-3.
[7] R. Doc. 190-1 at 5.
[8] R. Doc. 210 at 14.
[9] R. Doc. 13. Hakeam Drane and Larry Chatman were also charged in that original indictment.
[10] R. Doc. 194. Hakeam Drane was also charged with additional offenses in the superseding indictment.
[11] R. Doc. 190.
[12] The search warrant which authorized the search of the package actually authorized the search of two packages. *See* R. Doc. 210-6. The first package, whose search Rounds has no standing to challenge (as it was not addressed to him) was addressed to a company utilized by Larry Chatman, who was indicted with Rounds. *See* R. Doc. 13. That package was held by UPS at the request of federal agents before it was delivered. *See* R. Doc. 210-6 at 11. The second package, which is the subject of this motion, was not known to federal agents until its delivery, as will be detailed below.

was delivered to an apartment complex and was held by an employee of that complex.[13] Rounds attempted to pick the package up, but he was denied access to the package by the employee as he was neither the named addressee nor a resident of the apartment itself.[14] Through phone calls in which Rounds complained about his inability to take the package, federal agents learned of the existence of the package and its location.[15] Local law enforcement then reached the apartment complex and detained the package pending further investigation.[16] A K-9 unit arrived shortly thereafter and alerted to the presence of controlled substances within the package.[17] On this basis and on the basis of the phone calls, agents sought and received a search warrant, opened the package, and discovered a large quantity of methamphetamine.[18] Rounds contends that the seizure pending the warrant was an unconstitutional warrantless seizure and that all evidence recovered from the package ought to be suppressed.

Second, Rounds asserts that the government's initial warrantless search of his residence was improper, and that the subsequent search warrant was invalid as it resulted from the warrantless search. While some of the facts surrounding the search are disputed, it is undisputed that law enforcement was monitoring Rounds' residence with the intent to arrest him.[19] When his brother Jeremy emerged from the

---

[13] R. Doc. 190-1 at 2.
[14] In his motion, Rounds asserts without explanation that he "is listed as the addressee of [the] package." R. Doc. 190-1 at 9. The Court assumes therefore that "Jayson Smith" was an alias used by Rounds. The government does not challenge Rounds' standing to bring this motion.
[15] R. Doc. 210 at 9.
[16] *Id.* at 6.
[17] *Id.* at 7.
[18] *Id.* at 8.
[19] *Id.* at 3.

residence, agents confronted him and, after a conversation of disputed timbre, the agents obtained a key to the residence.[20]

Agents were likewise informed by Jeremy that Rounds was taking a shower inside the house.[21] An agent went to the door, knocked, and received no answer.[22] The agent, who claims he smelled the odor of marijuana, allegedly feared destruction of evidence and entered the residence.[23] The agent located and secured Rounds and conducted a protective sweep of the residence, during which they observed in plain view a "large stack of U.S. currency."[24]

Agents subsequently sought and received a warrant to search the residence and Rounds' vehicle, executed the warrant, and recovered evidence including marijuana, a firearm, blank money orders, UPS receipts, and ammunition.[25] The marijuana recovered was inside a plastic bag.

Rounds contends that, as the marijuana inside a plastic bag was the only marijuana recovered during the search, there is no way the agent could have smelled marijuana from outside the closed and locked door.[26] As such, he asserts that there were no exigent circumstances mandating entry and that, as the warrant relied in part on the currency located during the protective sweep, all evidence seized from the residence should be suppressed.

---

[20] *Compare* R. Doc. 210 at 12-14 *with* R. Doc. 190-1 at 13.
[21] R. Doc. 190-1 at 13.
[22] R. Doc. 210 at 14.
[23] *Id.* at 13.
[24] *Id.* at 14.
[25] *Id.*
[26] R. Doc. 190-1 at 15.

Third, Rounds states that the government improperly seized video surveillance equipment from his residence. Federal agents applied for and were granted a warrant to search and seize surveillance equipment and executed that warrant in the days following Rounds' arrest and indictment.[27] Rounds contends that the warrant was based on evidence illegally obtained during the initial protective sweep and that any evidence garnered from the seizure of the surveillance equipment should be suppressed.

## II. Law and Analysis

### A. Seizure of the Package

Rounds asserts – correctly – that law enforcement seized the package containing methamphetamine prior to obtaining a search warrant for the package. He also asserts that the seizure was therefore unconstitutional and that the evidence of the methamphetamine should be excluded.

"It is well established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement."[28] While "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy,"[29] "even first-class mail is not beyond the reach of all inspection."[30] In *Van Leeuwen*, the Supreme Court held that, subject to a fact-based evaluation of the circumstances, "[d]etention for [a] limited time [may be] … the prudent act rather than letting the

---

[27] *Id.* at 13-14.
[28] *United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996) (citation omitted).
[29] *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).
[30] *United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970).

packages enter the mails and then, in case the initial suspicions were confirmed, trying to locate them en route."[31] As "[w]arrantless searches are presumptively unreasonable,"[32] the government has the burden of proof to demonstrate that their pre-warrant detention was reasonable. In *Van Leeuwen*, the packages in question were detained 29 hours before a warrant was issued.[33] Rounds' package was detained roughly six hours before a warrant was issued.[34] However, the Supreme Court has made it clear that time is not the only factor in determining whether a package may be detained.

In *Van Leeuwen*, "the nature of the mailings, their suspicious character, the fact that there were two packages going to separate destinations," and other factors led the Court to approve the warrantless detention.[35] More recently, the Fifth Circuit has identified several factors to consider in determining whether detention of a package pending a warrant is reasonable, including: "investigatory diligence, the length of the detention, and whether there were circumstances beyond the investigator's control."[36] In that case, the Fifth Circuit held that a seven day delay (which included five days of travel time and an additional two days before investigators secured a warrant) was reasonable.[37] Here, there was relatively little time between the initial detention and the warrant – roughly six hours – and the

---

[31] *Id.* at 253.
[32] *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992).
[33] *Van Leeuwen*, 397 U.S. at 253.
[34] R. Doc. 210 at 9.
[35] *Van Leeuwen*, 397 U.S. at 253.
[36] *United States v. Beard*, 16 F.4th 1115, 1119 (5th Cir. 2021).
[37] *Id.* at 1121.

agents demonstrated "investigatory diligence."[38] Hardly any time – less than half an hour – passed between the initial locating of the package and a canine sniff which alerted agents to the possible presence of controlled substances.[39] And agents pursued the warrant expeditiously, especially when accounting for the roughly 60-mile drive an agent took from Houma to New Orleans in order to present the warrant application to the U.S. Magistrate Judge.

Perhaps most persuasively, the package was detained based on the substance of Rounds' phone calls.[40] Around ten in the morning on May 14, 2019, agents monitoring the wiretap on Rounds' phone were alerted to the possibility that there was another package in addition to the one they had prevented from reaching Larry Chatman.[41] Chatman spoke with Rounds, asking if Rounds "got [yours] yet," and Rounds stated that "it shows out for delivery."[42] When the package was delivered to the apartment complex, agents learned by Rounds' own words that he was unable to retrieve the package.[43] While Rounds attempted to get the resident of the apartment to return home from her place of work to get his package,[44] law enforcement located the apartment complex and spoke with the employee who had declined to give the package to Rounds.[45] Rounds made more calls and told others that police had detained his package and he asked at least one unknown individual if he "ever heard

---

[38] R. Doc. 210 at 9.
[39] *Id.*
[40] *Id.* at 6.
[41] *See supra*, n. 13.
[42] R. Doc. 210-2 at 6.
[43] *See id.* at 6-8.
[44] *Id.* at 7-8.
[45] *Id.* at 8.

of somebody, uh, package getting hit?"[46] Later in that same conversation, he complained that "they [law enforcement] probably got [Chatman] and they got me now."[47] He continued on to inform his counterpart on the phone that he had "straight clear" in the package,[48] which the government contends is code for methamphetamine.[49] Based on the substance of these conversations, which agents were monitoring and which informed the decision to detain the package, the "investigatory diligence" of the agents, and the relatively short "length of the detention,"[50] the Court finds that the detention was eminently reasonable under the circumstances and, therefore, there is no constitutional violation.

## B. Search of the Residence and Vehicle

"It is well established that warrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement."[51] However, "a warrantless entry will survive constitutional scrutiny if, inter alia, 'exigent circumstances exist to justify the intrusion.'"[52] "The burden is on the government to prove the existence of the exigency."[53] Such circumstances "include those in which officers reasonably fear for their safety, where firearms are present, or where there is a risk of a criminal suspect's escaping or fear of destruction of evidence."[54] The Fifth Circuit has also noted as relevant other factors including "the

---

[46] *Id.* at 10.
[47] *Id.* at 17.
[48] *Id.* at 22.
[49] *Id.* at 24.
[50] *Beard*, 16 F.4th at 1119.
[51] *Jaras*, 86 F.3d at 388 (citation omitted).
[52] *United States v. Rico*, 51 F.3d 495, 500-501 (5th Cir. 1995) (citation omitted).
[53] *Id.* at 501.
[54] *United States v. Mendoza-Burciaga*, 981 F.2d 192, 196 (5th Cir. 1992).

degree of urgency involved and amount of time necessary to obtain a warrant; … [the] reasonable belief that contraband is about to be removed; … [and] information indicating the possessors of the contraband are aware that the police are on their trail."[55] After reviewing the defendant's and the government's submissions, the Court finds that an evidentiary hearing would be helpful in order to sort through the disputed facts with respect to this issue.[56]

### C. Suppression of Surveillance Evidence

The government submits that this element of the motion is moot as no such evidence was seized from Rounds' residence.[57] The government states that Rounds' security system saves its data in the cloud and that agents therefore had no access to the data when they seized the equipment.[58] This element of Rounds' motion is therefore moot.

### III. Conclusion

Accordingly, **IT IS ORDERED** that:

Rounds' motion to suppress is **DENIED** with respect to the evidence obtained from the package;

Judgment is reserved pending an evidentiary hearing with respect to the evidence obtained from the residence and vehicle;

---

[55] *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993) (citations omitted).
[56] The Court likewise reserves ruling on the government's contention that this evidence is admissible via the independent source doctrine.
[57] R. Doc. 210 at 23-24.
[58] *Id.* at 24.

The motion is **DENIED AS MOOT** with respect to the alleged evidence obtained from the seizure of surveillance equipment.

**IT IS FURTHER ORDERED** that an evidentiary hearing is set for **TUESDAY, MAY 31, 2022 at 2:00 P.M.**

New Orleans, Louisiana, May 13, 2022.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**